```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

BRIAN DAVID FLORES,            :

      Plaintiff,          :
                                               PRISONER
V.                             :   Case No. 3:05-CV-1288(RNC)

THERESA LANTZ, et al.,         :

      Defendants.         :

## RULING AND ORDER

Plaintiff, proceeding pro se and in forma pauperis, brings this action pursuant to 42 U.S.C. § 1983. At the time of the events leading to this litigation, plaintiff was a pretrial detainee in a protective-custody unit at Cheshire Correctional Institute (CCI). He names seven defendants in his complaint, in their individual and official capacities: Theresa C. Lantz, the Commissioner of the Connecticut Department of Corrections (DOC); Daniel W. Martin, Warden of CCI; Ricardo Ruiz, a doctor at CCI; and Joseph Carlone, Mark Lizotte, Al Esposito, and Maurice Harris, all corrections officers at CCI.

Plaintiff makes essentially four claims.[1] First, and most generally, he alleges that defendants violated his constitutional rights by transferring him from a community correctional center

---

[1] The amended complaint contains five separate claims. However, two of these claims, relating to plaintiff's being housed and transported with other categories of prisoners, raise identical legal questions and so will be treated as one for present purposes.

to CCI, where he was housed with violent convicted felons, and by transporting him to and from CCI along with general population inmates. The remaining three claims stem from a specific incident in which plaintiff was assaulted in his cell by a sentenced inmate. He alleges that defendants violated his constitutional rights by failing to protect him from the inmate who assaulted him, refusing to allow him to report the assault to the police, and denying him proper medical treatment for injuries he sustained as a result of the assault.

On December 12, 2007, defendants moved for summary judgment on a number of grounds. To date, plaintiff has not filed a memorandum in response to the motion despite having been notified of his obligation to do so.[2] In fact, plaintiff has not been heard from in this matter since November 20, 2006.

I. Standard of Review

Summary judgment may be granted when there is "no genuine issue as to any material fact" and the movant is "entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact

---

[2] Both the court and the defendants informed plaintiff of his obligation to respond to the motion and the contents of a proper response. See Docs. ## 27-10 and 28.

exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-moving party. When the motion for summary judgment is unopposed, "the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). In making this assessment, the Court is bound to accept the factual assertions in the movants' Local Rule 56(a)1 Statement, provided they are supported by the record.[3] In this situation, the summary judgment analysis turns principally on whether, taking the facts presented in the Local Rule 56(a)1 Statement as undisputed, the defendants have demonstrated that they are entitled to judgment as a matter of law. See, e.g., Blalock v. Bender, 2006 WL 1582217, at *1 (D. Conn. June 1, 2006); Smith v. Principi, 2004 WL 1857582, at *1 n. 1 (S.D.N.Y. Aug. 19, 2004). I conclude that the defendants have made the necessary showing.

II. Facts

On April 8, 2004, plaintiff, a pretrial detainee, was transferred from Bridgeport Correctional Center to CCI. He was

---

[3] Local Rule 56(a)(1) provides: "All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)2."

confined in the North Block Protective Custody Unit, along with prisoners who had been convicted of felonies, including violent felonies.  In the Spring of 2005, plaintiff was transported to and from CCI on several occasions with general population inmates.  Throughout his stay at CCI, plaintiff suffered from depression and anxiety disorder and was prescribed medication by DOC physicians.  His anxiety was exacerbated by the conditions of his confinement.

On May 9, 2005, while plaintiff was taking recreation, another inmate, Ricky Bohannon, charged at him and "assaulted him by forcibly knocking him forward while also jabbing him in the ribs." (Pl.'s Compl. ¶ 30.)  Hoping to prevent an escalation of violence, plaintiff locked himself in his cell, "Four Cell."  At the time, defendant Harris was the on-duty officer in North Block.  Bohannon followed plaintiff to his cell and yelled to Officer Harris to unlock it.  At this time, Harris was positioned approximately twenty-five feet away from the cell. Believing that the inmates inside Four Cell wanted to exit to take recreation, Harris "popped" the door.  Bohannon entered the cell and allegedly assaulted plaintiff again.  Plaintiff escaped from his cell, approached Harris's desk and demanded to know why Harris had popped the door.  He also said that he wanted to press charges against Bohannon.  Plaintiff did not appear to be injured.  Later that day, Harris saw plaintiff and Bohannon

interacting in a friendly manner.

The following day, May 10, defendant Esposito, a DOC Captain who supervised Harris, learned of the previous day's incident from three prisoner complaints, one written by plaintiff and two submitted anonymously. Captain Esposito initiated an investigation, during which he examined surveillance tapes and interviewed plaintiff, Bohannon and several other inmates. Esposito immediately ordered Bohannon removed to restrictive housing. Esposito's investigation concluded that, while there were no witnesses to the assault, it appeared likely that Bohannon had targeted plaintiff for abuse and extortion. Esposito therefore recommended a transfer for Bohannon, who was transferred out of CCI on May 18, 2005. Esposito also concluded that Harris had violated three sections of DOC Administration Directives by allowing Bohannon to enter plaintiff's cell and not reporting the incident. Harris was ordered to attend a "coaching session."

Plaintiff alleges that Bohannon was a known bully. However, defendants' Local Rule 56(a)(1) Statement asserts that none of the defendants had received notice that Bohannon posed a threat to the safety of plaintiff or other inmates before the incident on May 9, 2005. Moreover, DOC records show that in the two years Bohannon was housed at CCI before the incident, he received only one disciplinary ticket, for possession of contraband.

5

Despite the fact that Bohannon had been removed from North Block, plaintiff remained frightened and uneasy. He felt that Harris was angry at him for reporting the incident to Esposito. Plaintiff wanted the State Police to investigate what he perceived as a crime of violence. On May 10, he requested that Captain Esposito call the police, but Esposito refused to do so. That night, plaintiff wrote letters to his sister, the public defender assigned to his case, and the Ombudsman of the DOC, pleading for help. On May 20, he wrote to defendant Martin, the warden at CCI, asking him to address his concerns about the assault. When Warden Martin did not immediately respond, plaintiff filed a grievance.

On May 13, plaintiff's sister called the State Police and was referred to a Trooper Cop. Trooper Cop took a statement from plaintiff's sister, but did not immediately investigate the alleged crime. Plaintiff subsequently wrote several letters both to State Police Troop I and to Commissioner Lantz and mailed them to his sister, who faxed them to the intended recipients. On May 31, Trooper Cop visited plaintiff at CCI and opened a case file. He interviewed several other inmates and requested a copy of the video from May 9. Nothing came of Trooper Cop's investigation.

Following the incident on May 9, plaintiff was examined by medical staff at least six times. On May 10, a nurse examined him and found no signs of physical injury and no marks on his

6

body.[4]  She advised him to sign up for mental health treatment. Three days later, a psychiatric nurse met with plaintiff and noted that he suffered from situational distress, but that it had resolved.  She did not note any physical injuries.  Plaintiff continued to complain of back pain and headaches, and ultimately filed a grievance on May 20, 2005, complaining about a lack of medical attention.  On May 25, plaintiff met with defendant Dr. Ruiz, who diagnosed him with fatigue and gave him a prescription for the pain reliever, Naproxen.[5]  Plaintiff continued to request medical care, including x-rays and a motion test.  He was subsequently examined twice more, on June 15 and July 5, but without any finding of physical injury stemming from his encounter with Bohannon.

III. Discussion

Defendants move for summary judgment on several grounds. They argue that the claims for damages against them in their official capacities are barred by the Eleventh Amendment, that some of the claims should be dismissed as to certain defendants for lack of personal involvement, and that the claims as to which personal involvement is adequately alleged present no issue for

---

[4]Plaintiff alleges that she "only had [him] lift up the front of his shirt." (Pl's. Compl. ¶ 52.)

[5]Plaintiff argues that Dr. Ruiz "never once left his seat, performed no physical or visual examination whatsoever, and made a bogus diagnoses in a blatant attempt to downplay the true nature and extent of plaintiffs injury." (Pl's Compl. ¶ 69.)

7

trial. I agree.

A. <u>Official Capacity Claims</u>

In his amended complaint, plaintiff names each defendant in his or her individual and official capacity. Suits against state officials in their official capacities are deemed to be suits against the State, which are precluded by the Eleventh Amendment insofar as they seek money damages. See <u>Ford v. Reynolds</u>, 316 F.3d 351, 354 (2d Cir. 2002). Accordingly, the motion for summary judgment is granted as to all claims for damages against the defendants in their official capacities.

B. <u>Personal Involvement</u>

Under § 1983, personal involvement in an alleged constitutional deprivation is a prerequisite to an award of damages against a defendant in his individual capacity. <u>McKinnon v. Patterson</u>, 568 F.2d 930, 934 (2d Cir. 1977). Personal involvement of an official in a supervisory position "may be established by showing that he (1) directly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated." <u>Iqbal v. Hasty</u>, 490 F.2d 143, 152

(2d Cir. 2007).

Plaintiff sues defendant Lantz, the Commissioner of the DOC, for allowing him to be subjected to "punitive incarceration" at CCI, although he was only a pretrial detainee. He also sues both Commissioner Lantz and Warden Martin for allowing him to be transported in buses that did not properly separate him, a protective custody inmate, from general population inmates. The defendants' Local Rule 56(a)1 Statement contains no facts relating to these claims. Neither does the record contain any evidence regarding the involvement of these two defendants in the decision to transfer plaintiff to CCI and transport him in buses with general population inmates. Drawing inferences in favor of plaintiff, it is possible that both Commissioner Lantz and Warden Martin "created a policy or custom under which the violation occurred" and "failed to remedy the violation after being informed of it by report or appeal." Id. See also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986).

Plaintiff seeks damages from defendants Harris, Esposito, Martin, Carlone and Lizotte for failing to protect him from a known threat. It is clear that Harris was personally involved in the incident on May 9, 2005. Esposito was Harris's immediate supervisor and also the officer who handled the investigation into the incident. However, he was not on duty at the time of the incident. Nor did he fail to remedy the violation after

9

learning of it. Plaintiff does not allege that Esposito created a policy or custom that facilitated the violation, or that he was grossly negligent in supervising Harris. Therefore, the failure to protect claim is dismissed for lack of personal involvement as to Esposito.

With respect to defendant Martin, the complaint alleges only that he failed to respond to plaintiff's grievances concerning the incident on May 9. "[I]t is well established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." Greenwaldt v. Coughlin, 1995 U.S. Dist. LEXIS 5144 at *11, 1995 WL 232736 at *4 (S.D.N.Y. 1995). See also Higgins v. Artuz, 1997 U.S. Dist. LEXIS 12034 at **17-18, 1997 WL 466505 at *7 (S.D.N.Y. 1997); Clark v. Coughlin, 1993 U.S. Dist. LEXIS 7776 at *15 n. 2, 1993 WL 205111 at *6 n. 2 (S.D.N.Y. 1993) (collecting cases).[6] Therefore, plaintiff's failure to protect

---

[6] In Wright v. Coughlin, the Second Circuit drew a distinction between a letter of complaint received by the Commissioner of the New York Department of Corrections and a habeas corpus petition served on the Superintendent of Attica Correctional Facility. See 21 F.3d 496, 501-02 (2d Cir. 1994). The letter, which complained about conditions of confinement in general terms, did not put the Commissioner "on actual or constructive notice of a violation." Id. at 501. In contrast, the habeas petition contained specific allegations of constitutional violations and thus rendered the Superintendent "a supervisory official who, after learning of the violation through a report or appeal, failed to remedy the wrong." Id. at 502. In the present case, the letter sent to Warden Martin is more like the

claim is also dismissed as to Martin.

With regard to defendants Carlone and Lizotte, plaintiff alleges that, before the incident, these defendants conducted an investigation of complaints regarding Bohannon and were "waiting for him to do something stupid." (Pl's. Comp. ¶ 51). Taking the factual assertions in defendants' Local Rule 56(a)1 Statement as undisputed, neither of these defendants had any notice that Bohannon posed a risk to plaintiff's safety. (Def.'s Rule 56(a)1 Statement ¶ 8). Therefore, as to these defendants, the failure to protect claim is dismissed for lack of personal involvement.

Plaintiff next seeks damages from defendants Martin, Esposito and Harris for preventing him from speaking with law enforcement officers concerning the alleged assault. Plaintiff contends that, immediately after the assault, Harris refused to put him in contact with an administrative officer so he could pursue charges and threatened him with segregated confinement if anyone else got involved. (Pl's. Compl. ¶ 40). Plaintiff alleges that Esposito also threatened him with "seg" if the State Police got involved. With regard to Warden Martin, plaintiff alleges that he wrote the Warden a letter complaining that he had not been allowed to pursue charges, and that the Warden failed to respond. (Pl's Compl. ¶¶ 47-48). However, the letter plaintiff

---

generalized grievance received by the Commissioner in <u>Wright</u>, than the particularized list of formal allegations in the habeas petition received by the Superintendent.

cites, included as Exhibit C to his Complaint, contains a response from the Warden. (Pl.'s Compl. Ex. C). As just discussed, moreover, even if Warden Martin failed to respond, such an omission is insufficient to establish personal involvement in the underlying violation. Therefore, the claim for denial of the right to contact law enforcement is dismissed for lack of personal involvement as to Martin but not Harris and Esposito.

Finally, plaintiff seeks damages from Martin and Dr. Ruiz for denial of medical treatment. Accepting as true plaintiff's allegation that Dr. Ruiz "made a bogus diagnoses in a blatant attempt to downplay the true nature and extent of the plaintiffs injury," the requirement of personal involvement is satisfied as to Dr. Ruiz. However, the only allegation as to Warden Martin is that he failed to respond to plaintiff's complaints set out in the same May 20 letter discussed above. Accordingly, the denial of medical treatment claim is dismissed for lack of personal involvement as to Martin but not Ruiz.

To recap, the essential element of personal involvement is adequately alleged with regard to the following claims: (1) the claim relating to improper placement and transportation with general population inmates as to Lantz and Martin; (2) the failure to protect claim as to Harris; (3) the claim for denial of access to law enforcement as to Harris and Esposito; and (4)

12

the denial of medical treatment claim as to Ruiz. Each of these claims will now be addressed in turn.

C.  Improper Placement and Transportation

Plaintiff claims that defendants violated his due process rights by transferring him to CCI, where he was housed with general population inmates, and by transporting him to and from CCI on buses with general population inmates. In Bell v. Wolfish, the Supreme Court ruled that in evaluating the constitutionality of conditions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, the proper inquiry is whether the conditions amount to punishment. 441 U.S. 520, 535 (1979). If a particular condition is reasonably related to a legitimate governmental objective, it does not amount to punishment under the Due Process Clause. Id. at 549. Plaintiff has not shown that his placement with sentenced inmates at CCI or his transportation with general population inmates on buses to and from CCI was a form of punishment in violation of due process. In fact, plaintiff was safely housed at CCI for over a year before the events at issue in this case. Accordingly, the motion for summary judgment on this claim is granted.

D.  Failure to Protect

Plaintiff claims that defendant Harris failed to protect him from inmate Bohannon, who allegedly posed a known threat to

plaintiff's safety. In the context of prison safety, there is no substantial difference between a pretrial detainee's rights under the Due Process Clause and a sentenced prisoner's rights under the Eighth Amendment. See Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000). Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of inmates in their custody." Hayes v. New York City Dep't of Corrections, 84 F.3d 614, 620 (2d Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 832-33 (1994). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834. To state a cognizable claim for failure to protect, an inmate "must allege actions or omissions sufficient to demonstrate deliberate indifference [on the part of prison officials]; mere negligence will not suffice." Hayes, 84 F.3d at 620. A prison official acts with deliberate indifference if he knows an inmate faces a substantial risk of serious harm and fails to take reasonable measures to abate the risk. See id.

Though it is clear that Officer Harris erred in opening the cell door for Bohannon, plaintiff has failed to show that this error amounted to deliberate indifference, as opposed to mere negligence. Harris has sworn in his affidavit that he opened the cell door thinking that the inmates in Cell Four (including

14

plaintiff) wanted to exit. He denies knowing that Bohannon wanted to enter the cell to commit an assault. Defendants' Local Rule 56(a)1 Statement asserts that no defendant had notice that Bohannon posed a threat to plaintiff's safety before the incident on May 9, 2005. This assertion is supported by affidavits and DOC records. See Def.'s Mem. Supp. Summ. J. Exs. 1-4, 6). Because plaintiff has failed to create an issue of material fact in this regard, defendants' motion for summary judgment on the failure to protect claim is granted.

    E.    <u>Denial of Access to Police</u>

Plaintiff claims that he was denied his "right to report criminal assault to a law enforcement agency." (Pl.'s Compl. ¶ 87). The record establishes that plaintiff contacted the Connecticut State Police through his sister on May 13, 2005, four days after the assault. As discussed above, Trooper Cop visited plaintiff on May 31 and investigated his complaint. Plaintiff's disappointment with the outcome of the investigation does not provide him with a cause of action for a deprivation of a federally protected right. See <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 619 (1973) (private citizen lacks judicially cognizable interest in prosecution of another). Accordingly, the motion for summary judgment is granted with regard to this claim.

    F.    <u>Denial of Medical Care</u>

To state a claim under § 1983 for denial of medical care, a

pretrial detainee must establish both that he was denied treatment necessary to remedy a serious medical condition and that the denial of care was due to deliberate indifference to his medical needs. Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996). Plaintiff's claim fails under the first prong because he was not denied medical treatment needed to remedy a serious medical condition.[7]

Plaintiff has not shown that his medical condition was sufficiently serious to state a claim under § 1983. The applicable standard "contemplates 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (quoting Nance v. Kelly, 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting)). Though plaintiff alleges that he "continues to experience back pain, headaches and anguish that are tortuous [sic] [and has] suffered depression and mental stress and anxiety," (Pl.'s Compl.

---

[7] Thus, it is unnecessary to decide whether, in the context of denial of medical treatment claims, the same deliberate indifference standard applies to sentenced prisoners under the Eighth Amendment and pretrial detainees under the Due Process Clause. In Weyant, the Second Circuit noted that, although the Eighth Amendment standard for assessing deliberate indifference is subjective, the Court had on at least one occasion applied an objective standard in the due process context. 101 F.3d at 856 (citing Liscio v. Warren, 901 F.2d 274, 276-77 (2d Cir. 1990)). More recently, in Cuoco v. Moritsuqu, the Court strongly suggested that the subjective standard applies in the due process context: "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 222 F.3d 99, 107 (2d Cir. 2000) (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

16

¶ 80), his allegations are insufficient to withstand defendants' statement of undisputed facts. Defendants' Local Rule 56(a)1 Statement states that medical representatives (including Dr. Ruiz) examined plaintiff numerous times following the assault and found no signs of physical injury. These statements are supported by the notes in plaintiffs' medical record, including a medical incident report completed on May 10. (Def.'s Mem. Supp. Summ. J. Ex. 7) ("No signs of physical injuries noted . . . . [Plaintiff] states [he] was poked in the chest and face by IM Bohannon over magazines. No marks noted on body.").

Even if plaintiff's injuries were sufficiently serious, he fails to show that he was denied treatment, as required to state a constitutional claim. See Weyant, 101 F.3d at 856. Defendants' Local Rule 56(a)1 Statement shows – and the full record corroborates – that plaintiff was examined by medical staff at CCI three times in the weeks following his alleged injury and his ailments were addressed. On May 10, the morning after the assault, a nurse examined him and, finding that he suffered from no physical injury, advised him to sign up for mental health treatment. (Def.'s Mem. Supp. Summ. J. Ex. 7). Three days later, on May 13, plaintiff was examined by a psychiatric nurse, who observed that he suffered from "situational distress," which had been resolved by Bohannon's transfer out of North Block. (Id.) On May 25, Dr. Ruiz examined

17

plaintiff, determined that he suffered from no serious physical injury, and prescribed Naproxen to relieve any pain. (Id.) Plaintiff's medical records show several more visits with medical staff over the ensuing months.

In light of defendants' Local Rule 56(a)1 Statement and the supporting medical records, it is undisputed that defendants did not deny plaintiff treatment necessary to remedy a serious medical condition.  Plaintiff may not have been satisfied with his medical care, but "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim. . . . Moreover, negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).  Therefore, the motion for summary judgment on plaintiff's claim for denial of medical care is granted.

IV. Conclusion

Defendants' motion for summary judgment [doc. #24] is hereby granted.

So ordered this 30th day of September 2008.

                                    /s/ RNC
                              Robert N. Chatigny
                          United States District Judge